BRICKLAYERS INSURANCE AND
WELFARE FUND, BRICKLAYERS
PENSION FUND, BRICKLAYERS
SUPPLEMENTAL ANNUITY FUND,
BRICKLAYERS AND TROWEL TRADES
INTERNATIONAL PENSION FUND, NEW
YORK CITY AND LONG ISLAND JOINT
APPRENTICESHIP AND TRAINING FUND,
INTERNATIONAL MASONRY INSTITUTE
and JEREMIAH SULLIVAN, JR., in his
fiduciary capacity as Administrator, and
BRICKLAYERS LOCAL 1,
INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFT
WORKERS,

　　　　　　　　　　　　　　Plaintiffs,　　　　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　　AND ORDER
　　　　　- versus -
　　　　　　　　　　　　　　　　　　　　　　12-CV-2314 (JG)(RLM)
KENNETH LASALA, MARK LASALA,
KENNETH LASALA, JR., LIBERTY
MUTUAL INSURANCE COMPANY, and
PLAZA CONSTRUCTION COMPANY,

　　　　　　　　　　　　　　Defendants.

A P P E A R A N C E S

　　DOAR RIECK KALEY & MACK
　　　　217 Broadway, Suite 707
　　　　New York, NY 10007
　　By:　James I. Wasserman, Esq.
　　　　*Attorneys for Plaintiffs*

　　BALLON STOLL BADER & NADLER, P.C.
　　　　729 Seventh Avenue  – 17th Floor
　　　　New York, New York 10019
　　By:　Lawrence J. Leibowitz, Esq.
　　　　*Attorneys for LaSala Defendants*

　　LEVY, TOLMAN & COSTELLO, LLP
　　　　630 Third Avenue

|   | New York, New York 10017 |
|---|---|
| By: | Robert J. Costello, Esq. |
|   | Steven I. Tolman, Esq. |
|   | Alan Levy, Esq. |
|   | *Attorneys for Defendant and Cross-Claim Plaintiff Plaza Construction LLC, successor by merger to Plaza Construction Corp.* |

JOHN GLEESON, United States District Judge:

Plaintiff Bricklayers Local 1, International Union of Bricklayers & Allied Craftworkers ("Local 1"), along with several employee-benefit funds, move for summary judgment on claims that the principals of two subcontracting firms breached their fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and committed conversion under New York law by failing to remit employee union dues. At the same time, Defendant/Cross-Claim Plaintiff Plaza Construction LLC ("Plaza"),[1] a general contractor who had hired the subcontracting firms, moves for summary judgment against the firms' principals on claims relating to Labor and Material Payment Bonds, certain loan guarantee agreements, and various assigned claims.

For the reasons explained below, Plaintiffs' motion for summary judgment is granted in part and denied in part, and Defendant/Cross-Claim Plaintiff Plaza's motion for summary judgment is granted in part and denied in part.

BACKGROUND

Unless otherwise noted, the following facts, taken from the parties' statements submitted pursuant to Local Rule 56.1, are undisputed:

---

[1] Plaza Construction LLC is the successor by merger to the captioned defendant Plaza Construction Corp.

A.  *Plaintiffs' Claims Against the LaSala Defendants*

Local 1 is a labor union that represents bricklayers and related trades in New York City and Long Island. Along with various employee-benefit funds, it has brought an action against Defendants Kenneth LaSala Sr., ("Ken Sr."), Mark LaSala ("Mark"), and Kenneth LaSala, Jr. ("Ken Jr.") (collectively, the "LaSala Defendants"). Ken Sr., Mark, and Ken Jr. are the sole officers and shareholders of two masonry subcontractors: Town Masonry Corp. and New Town Corp. ("Town" and "New Town," respectively). Pl. Rule 56.1 Stmt ¶ 17.

1.  *The Obligations of Town and New Town Pursuant to the Collective Bargaining Agreements*

Both Town and New Town were members of the Associated Brick Mason Contractors of Greater New York, a multi-employer bargaining association that had negotiated collective-bargaining agreements with Local 1. Pursuant to these agreements, Town and New Town were required to make contributions at specified rates per employee-hour worked to several union funds: the Bricklayers Pension Fund ("Pension Fund"), the Bricklayers Supplemental Annuity Fund ("Annuity Fund"), Bricklayers Insurance and Welfare Fund ("Welfare Fund"), the New York City and Long Island Joint Apprenticeship and Training Fund ("JATC"), and the International Masonry Institute. Importantly, all contributions to these funds came directly from the employers, and were not deducted from employee paychecks.

These funds were established pursuant to the Taft-Hartley Act, 29 U.S.C. ¶ 186(c), and thus governed by a board of trustees composed of employer and union representatives in equal number. *Id.* ¶¶ 10 & 12. Ken Sr. was a trustee of the Welfare Fund, the Pension Fund, the Annuity Fund and the JATC during the time period covered by this lawsuit. Mark and Ken Jr. were not trustees to any of the funds.

3

The collective bargaining agreements also obligated Town and New Town to take after-tax deductions from employee paychecks and remit them to (1) the Vacation Fund ("VF"),[2] (2) the Bricklayers and Trowel Trades International Pension Fund ("IPF"),[3] and (3) to Local 1 and its parent union as union dues ("Dues").

### 2. *Ken Sr.'s Alleged Agreement to Guarantee Amounts Owed by Town and New Town*

An October 2010 payroll audit of Town and New Town revealed delinquencies of more than $1.4 million. *Id.* ¶ 24. To address these owed amounts, the Plaintiffs entered into a payment agreement with Town and New Town. After additional audits and additional payments made by Town, the parties entered into an amended payment agreement on July 31, 2011, under which Town and New Town promised to pay $1.8 million in installments to satisfy their outstanding balances. *Id.* ¶ 28.

After having received only a single payment of $100,000 under the amended payment agreement, the Plaintiffs sent the LaSala Defendants a cure notice. *Id.* ¶ 38. On November 17, 2011, Ken Sr. and his lawyer, William Dealy, met with Local 1 President, Jeremiah Sullivan, Jr., and his lawyer, James Wasserman. What Ken Sr. promised at this meeting is a matter of significant disagreement. According to Plaintiffs, Ken Sr. agreed to use his personal assets to satisfy Town and New Town's obligations under the amended payment agreement. According to the LaSala Defendants, this good faith promise was conditioned on the sale of certain real property, which never came to fruition. On December 14, 2011, the LaSala Defendants' counsel sent a letter to Local 1's counsel detailing the proposed sale. Plaintiffs

---

[2] The Vacation Fund is a component of the Welfare Fund. Pl. Rule 56.1 Stmt ¶ 5.
[3] Although contributions to the IPF are made directly by employers, because the IPF's Declaration of Trust provides that "Title to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund," it is subject to the same rules as if these contributions were deducted from employee paychecks and remitted. LaSala Aff. ¶ 12, ECF No. 110.

4

claim that this letter did not reflect the actual agreement, and that after Town and New Town filed for bankruptcy several months later, Ken Sr. orally confirmed that he was personally responsible for the amounts owed.

   3.  *Town and New Town's Frozen Line of Credit*

On February 1, 2010, Ken Sr. executed a promissory note to secure a $2.5 million line of credit for Town and New Town from Capital One Bank. The LaSala Defendants claim that this note was the latest in a series of notes that evidence the terms of a loan originally made in 2006 by North Fork Bank. *See* LaSala Def. Resp. to Pl. Rule 56.1 Stmt, ¶ 20. The promissory note was secured by "all personal property now owned or hereafter acquired" by Town and New Town including accounts receivable.

Over the next year, Town and New Town entered into three forbearance agreements with the Capital One, each extending the time to repay the loan. The third and last forbearance agreement extended the payment period to July 31, 2012, and granted Capital One a second mortgage for $1.95 million on property at 711 South Columbus Avenue, Mount Vernon, New York. The property was owned by Town Holding Corp., of which Mark and Ken Jr. were the sole officers and shareholders.

  B.  *Defendant Plaza's Cross-Claims Against the LaSala Defendants*

In a separate motion, Plaza seeks summary judgment on its cross-claims against the LaSala Defendants. As a general contractor, Plaza entered into contracts with the New York City School Construction Authority ("NYCSCA") on the Maspeth Campus and Spring Creek High School projects. Plaza hired Town as a subcontractor to perform masonry work for these two projects. Plaza, as principal, and Liberty Mutual Insurance Company ("Liberty"), as surety, signed Labor and Material Payment Bonds as required by the NYCSCA relating to both projects.

These bonds made Plaza responsible to Plaintiffs if the LaSala Defendants failed to pay their obligations under the CBAs, which is what happened.

On May 10, 2012, the Plaintiffs filed this action. Though the first amended complaint added Plaza and Liberty as defendants, on October 9, 2013, Plaintiffs stipulated to the dismissal of their claim against Plaza and Liberty in consideration of $788,694.86, which was paid to settle the bond claim action. Pl. Rule 56.1 Stmt ¶¶ 47 & 51. As part of the settlement, the Plaintiffs assigned to Plaza their claims against the LaSala Defendants for: (i) fiduciary breaches under ERISA involving misappropriated benefit fund assets owed to the IPF; (ii) employee VF contributions which were deducted from employee paychecks and not remitted; and for (iii) conversion under New York law for misappropriated dues that the LaSala Defendants took from employee paychecks and failed to remit to the Union (the "Assigned Claims").[4] Plaza's Rule 56.1 Stmt ¶ 30.

Additionally, Plaza asserts claims under several Loan and Rider Agreements entered into between Plaza, Town and Ken Sr. regarding the Spring Creek and Maspeth Campus projects. Pursuant to these Loan and Rider Agreements, Ken Sr. guaranteed the repayment of monies that Plaza advanced to Town for its obligations with respect to the Spring Creek and Maspeth Campus projects. Plaza Rule 56.1 Stmt ¶ 28.

DISCUSSION

A.   *Legal Standards*

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[4] These Assigned Claims were alleged by Plaintiffs in subparagraphs 22(c) and (d); 29(c) and (d); and 36(c) and (d) of the Second Amended Complaint, respectively. Plaza's Rule 56.1 Stmt ¶ 30.

law." Fed. R. Civ. P. 56(a). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

The mere fact that I have been presented with cross motions for summary judgment does not require that I grant judgment to one side or the other; rather, I must evaluate each motion separately, each time resolving ambiguities in favor of the non-moving party. *See, e.g., Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 313-14 (2d Cir. 1981).

  B. *Plaintiffs' Claims Against the LaSala Defendants*

At oral argument, the LaSala Defendants conceded liability on the Plaintiffs' First, Second, and Fourth claims. These claims concern amounts that were deducted from employee paychecks but never remitted to the respective funds as well as contributions owed to the IPF.[5] This leaves only Plaintiffs' Third Claim regarding employer dollars owed to Local 1 to be adjudicated.

    1. *Plaintiffs' Third Claim: Nonpayment of Amount Owed to the Pension Fund, Annuity Fund, Welfare Fund (excluding the Vacation Fund) and the JATC*

Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan <u>or</u> exercises any authority or control respecting management or disposition of its assets." 29

---

[5] Contributions to the IPF are treated as "employee dollars." *See supra* note 3.

7

U.S.C. § 1002(21)(A) (emphasis added). Congress, by using this statutory language, intended the term "fiduciary" to be construed broadly. *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997). Unlike the common law definition, ERISA's definition of fiduciary status is functional and not determined by virtue of a position that a person holds. *Id.*

Though Mark and Ken Jr. are shareholders and officers of Town and New Town, the record does not show that they have any trustee relationship with the employee-benefit funds, or any discretionary authority or control respecting the management of these various plans.

To establish fiduciary duty under the second prong, the Plaintiffs must show both that (1) the unpaid contributions were plan assets, and (2) the LaSala Defendants exercised a level of control over those assets sufficient to make them fiduciaries. *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009).

Absent provisions to the contrary in the relevant plan documents, "unpaid contributions are not assets of the plan." *Id.* at 287. Rather, employer contributions become assets only after being paid. *Id.* at 290; *Finkel v. Romanowicz*, 577 F.3d 79, 86 n. 8 (2d Cir. 2009); *see also NYSA-ILA Med. and Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 200-201 (S.D.N.Y. 1999). Since the amounts owed to the Pension Fund, Annuity Fund, Welfare Fund and the JATC consist of unpaid employer contributions, they were not "plan assets" with respect to ERISA. Therefore, Mark and Ken Jr. cannot be deemed fiduciaries under 29 U.S.C. § 1002(21)(A).[6]

---

[6] Plaintiffs also assert that since Ken Sr., Mark, and Ken Jr. took salaries during the relevant time period of $109,000, $185,000 and $175,000, respectively, they were personally liable under ERISA. Wasserman Aff., Exs. 28-30. On the limited facts before me at the summary judgment stage, I cannot say that this constitutes a fiduciary breach under ERISA.

a. *Ken Sr.'s Liability as a Trustee to the ERISA Funds*

However, Ken Sr. was not only an officer and shareholder of Town and New Town; he also served as a trustee of the Welfare Fund, the Pension Fund, the Annuity Fund, and the JATC. Pl. Rule 56.1 Stmt ¶¶ 18-19. As a result, irrespective of whether the employer contributions are "plan assets," he nonetheless can be deemed a fiduciary if he "exercises any discretionary authority or discretionary control respecting management of [the ERISA-covered] plan." 29 U.S.C. § 1002(21)(A). Whether Ken Sr. violated his fiduciary duty to the various funds as a trustee depends upon whether he was acting in a fiduciary capacity when he allegedly made misrepresentations to the employee-benefit funds. There exist several genuine issues of material fact regarding this matter.

An issue of material fact exists as to whether Ken Sr. actually made an oral promise at a meeting on November 17, 2011 to pay the amounts owed to the ERISA Funds out of his personal assets, and whether he orally reaffirmed this promise in February 2012 after Town and New Town filed for bankruptcy. Prior to the November 17 meeting, the Plaintiffs sent the LaSala Defendants a notice to cure for failure to make payments under the amended payment agreement of July 31, 2011. On November 10, 2011, the Plaintiffs followed this notice with an email to the LaSala Defendants' lawyer demanding, among other things, that Ken Sr. "post meaningful collateral to secure his debt." Pl. Rule 56.1 Stmt, ¶¶ 38-39.

The parties then met on November 17, 2011, but their accounts of this meeting differ sharply. Plaintiffs allege that Ken Sr. agreed to pay $1.5 million out of his personal assets because he and his sons were in the process of selling property that they personally owned. The LaSala Defendants admit that they represented to Plaintiffs that they would contribute funds from the sale of their real property, but only if the property were actually sold. *Id*. ¶ 40.

To support their version of events, the LaSala Defendants rely, in part, on a letter from Town and New Town's lawyer[7] to Plaintiffs on December 14, 2011. This letter states that the offer to use personal funds was contingent upon the sale of the property and that:

> Nothing contained in this letter is intended to imply in any way that Kenneth LaSala, Sr., Kenneth LaSala, Jr. or Mark LaSala guaranty in any way any payments due to the Benefit Funds. (LaSala Aff. ¶ 43 & Ex. F)

For his part, Local 1 President Sullivan states that on February 15, 2012, after Town and New Town had filed for bankruptcy, Ken Sr. assured him that the real estate sale was still proceeding, and that Sullivan need not worry that the payments would be barred by the bankruptcy court because they were now personal obligations of Ken Sr. and his sons. Sullivan Aff. ¶ 35. Given these conflicting accounts, I cannot conclude that no issue of material fact exists as to whether Ken Sr. made an oral agreement to personally pay the amounts owed under the amended payment plan by Town and New Town.

Second, even if Ken Sr. made these representations, it is far from clear that he did so in his capacity as a trustee to the fund, as opposed to as an employer. *See Amato v. Western Union Int'l Inc.,* 773 F.2d 1402, 1416-17 (2d Cir. 1985) (internal quotations omitted) ("ERISA permits employers to wear two hats, and . . . they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA.").

The cases that Plaintiffs and Plaza cite for the proposition that Ken Sr. violated his fiduciary duty as trustee involve conduct more clearly in the realm of plan administration. *See Varity Com. v. Howe*, 516 U.S. 489 (1996) (holding that defendants, who were both employers and plan administrators, making intentional representations about the future of plan

---

[7] Town and New Town's lawyer, William Dealy, died on December 30, 2012. LaSala Opp. Br. at 4 n. 4.

benefits to employee participants was an act of plan administration); *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) (affirming the finding of fiduciary breach where trustees, who were also corporate officers and directors, decided to purchase additional stock with pension fund monies to defend against a takeover bid); *see also Sasso v. Cervoni*, 985 F.2d 49, 51 (2d Cir. 1993) (holding a corporate employer does not have a fiduciary obligation to make trust fund contributions and a corporate officer's role in a company's failure to make such contributions is not automatically a breach of fiduciary duty).

C. *Plaza's Cross-Claims Against the LaSala Defendants*

1. *Plaza's Second Cross-Claim, Third Cross-Claim, and Assigned Claims*

Plaza seeks summary judgment against Ken Sr. for claims arising from Loan Agreements that Ken Sr. entered into with Plaza concerning Town's obligations to perform work and supply materials on the Spring Creek High School Project (Second Cross-Claim) and the Maspeth Campus Project (Third Cross-Claim). Plaza also seeks summary judgment for certain claims against the LaSala Defendants that Plaintiffs assigned to Plaza pursuant to a settlement agreement.[8]

To the extent that the LaSala Defendants did not concede liability at oral argument, their responsive papers offered no opposition to Plaza's Motion for Summary

---

[8] Plaintiffs have assigned to Plaza the following claims pleaded in the Second Amended Complaint: all rights and/or title to any claims or causes of action as against Kenneth A. LaSala, Mark LaSala and Kenneth LaSala, Jr. arising out of or by virtue of the subject Projects, Construction Contracts, Bonds, Town Subcontract, Bond Claims and/or this Action, including but not limited to (i) fiduciary breaches under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq., involving misappropriated benefit fund assets in the sum of $46,646.85 in unpaid employer contributions owed to the International Pension Fund as alleged in subparagraphs 22(c) and (d) of the Second Amended Complaint, and for $116,200.45 in employee Vacation Fund contributions that Kenneth A. LaSala, Mark LaSala and Kenneth LaSala, Jr. deducted from employee paychecks and did not remit to the Bricklayers Insurance and Welfare Fund as alleged in subparagraphs 29(c) and (d) of the Second Amended Complaint; and for (ii) conversion under New York law involving $76,845. 97 misappropriated dues payroll deductions that Kenneth A. LaSala, Mark LaSala and Kenneth LaSala, Jr. took from employee paychecks and failed to remit to the Funds as alleged in subparagraphs 36(c) and (d) of the Second Amended Complaint. Plaza's Rule 56.1 Stmt ¶ 30.

Judgment with respect to the Second Cross-Claim, Third Cross-Claim, and Assigned Claims. The LaSala Defendants were represented by counsel and stipulated to the Plaza's Rule 56.1 Statement, upon which Plaza relies for its motion.

Plaza rightly points out that Rule 56(e)(2) permits the Court to consider a fact undisputed for the purposes of a motion when a party fails to properly address it. "[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Federal Express*, 766 F. 3d. 189, 198 (2d. Cir. 2014). Accordingly, I find that the LaSala Plaintiffs have abandoned their defenses to the Second Cross-Claim, Third Cross-Claim and Assigned Claims.

2. *Plaza's First Cross-Claim: The Labor and Material Bonds*

However, with respect to the First Cross-Claim, which the LaSala Defendants dispute, there is a genuine issue of material fact requiring trial. The claim is for the entire amount that Plaza paid on behalf of Town and the LaSala Defendants, $788,694.86, which includes the $239,693.27 in unremitted employee contributions that Plaza also seeks in the Assigned Claims. Plaza Reply Br. at 4. Since the LaSala Defendants have already conceded liability for this $239,693.27 under the Assigned Claims, Plaintiffs should not be allowed to recover these same unremitted amounts through claims on Plaza's Labor and Material Payment Bonds.

Because the remaining $549,001.59 is based on unpaid employer contributions to the employee-benefit funds, it does not constitute "plan assets" within the meaning of ERISA. *See* 29 U.S.C. § 1002(21)(A). As with Local 1's claims, there remain on the limited record before me genuine issues of material fact as to whether Ken Sr., Ken Jr., and Mark violated their fiduciary duty with respect to these non-plan assets.

CONCLUSION

For the foregoing reasons, the Court grants the Plaintiffs' motion with respect to their first, second, and fourth claim, and denies the motion with respect to their third claim for relief. The Court grants Defendant/Cross-Claim Plaintiff Plaza Construction LLC's motion with respect to its second, third, and fourth claim, and denies its motion with respect to its first claim for relief. Jury selection and trial will occur at 9:30 a.m. on April 6, 2015. A final pretrial conference will be held on March 27, 2015 at 11:30 a.m.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 18, 2015
   Brooklyn, New York