BRICKLAYERS INSURANCE AND
WELFARE FUND, BRICKLAYERS
PENSION FUND, BRICKLAYERS
SUPPLEMENTAL ANNUITY FUND,
BRICKLAYERS AND TROWEL TRADES
INTERNATIONAL PENSION FUND, NEW
YORK CITY AND LONG ISLAND JOINT
APPRENTICESHIP AND TRAINING FUND,
INTERNATIONAL MASONRY INSTITUTE
and JEREMIAH SULLIVAN, JR., in his
fiduciary capacity as Administrator, and
BRICKLAYERS LOCAL 1,
INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFT
WORKERS,

        Plaintiffs,

- versus -

KENNETH LASALA, MARK LASALA,
KENNETH LASALA, JR., LIBERTY
MUTUAL INSURANCE COMPANY, and
PLAZA CONSTRUCTION COMPANY,

        Defendants.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

12-CV-2314 (JG)(RLM)

A P P E A R A N C E S

DOAR RIECK KALEY & MACK
 217 Broadway, Suite 707
 New York, NY 10007
By: James I. Wasserman, Esq.
 John F. Kaley, Esq.
 *Attorneys for Plaintiffs*

BALLON STOLL BADER &
NADLER, P.C.
 729 Seventh Avenue, 17th Floor
 New York, NY 10019
By: Lawrence J. Leibowitz, Esq.
 *Attorneys for the LaSala
 Defendants*

LEVY, TOLMAN & COSTELLO, LLP
 630 Third Avenue
 New York, NY 10017
By: Robert J. Costello, Esq.
 Steven I. Tolman, Esq.
 Alan Levy, Esq.
 *Attorneys for Defendant and
 Cross-Claim Plaintiff Plaza
 Construction LLC, successor by
 merger to Plaza Construction
 Corp.*

JOHN GLEESON, United States District Judge:

Plaintiffs Bricklayers Local 1, International Union of Bricklayers & Allied Craftworkers ("Local 1"), along with several employee-benefit funds, claim that the principals of two subcontracting firms breached their fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, and committed conversion under New York law by failing to remit employee union dues. Defendant/Cross-Claim Plaintiff Plaza Construction LLC ("Plaza"),[1] a general contractor who had hired the subcontracting firms, claimed that the same principals breached obligations under Labor and Material Payment Bonds, certain loan guarantee agreements, and various assigned claims.

On February 18, 2015, I granted summary judgment in favor of plaintiffs with respect to their first, second, and fourth claims, and denied the motion with respect to their third claim for relief. *See* ECF No. 117 at 13. In the same order, I granted Plaza's motion for summary judgment with respect to its second, third, and fourth claims, and denied its motion with respect to its first claim for relief. *Id.* Subsequent to that decision, Plaza withdrew its remaining claim. *See* ECF No. 123.

I conducted a bench trial on May 12, 2015 in connection with plaintiffs' third claim for relief against the LaSala Defendants, which alleged fiduciary breaches involving an amended payment agreement ("APA"). At trial, I received exhibits into evidence and heard testimony from Local 1 President Jeremiah Sullivan and Kenneth A. LaSala Sr. ("Ken Sr.").

I make the following findings of fact and conclusions of law.

---

[1] Plaza Construction LLC is the successor by merger to the captioned defendant Plaza Construction Corp.

2

A. *Findings of Fact*

Local 1 is a labor union that represents bricklayers and other trowel trades in New York City and Long Island. It is chartered by the International Union of Bricklayers & Allied Craftworkers ("IU"). For the last two decades, Local 1 has negotiated collective bargaining agreements ("CBAs") with the Associated Brick Mason Contractors of Greater New York ("ABMC"), a multi-employer bargaining association whose members employ bricklayers. The CBAs require ABMC employers to make contributions at specified rates per hour worked to pay for the cost of: (1) pension benefits provided by the Bricklayers Pension Fund ("Pension Fund"), Bricklayers Supplemental Annuity Fund ("Annuity Fund"), and Bricklayers and Trowel Trades International Pension Fund ("IPF"); (2) medical benefits provided by the Bricklayers Insurance and Welfare Fund ("Welfare Fund"); and (3) training provided by the New York City and Long Island Joint Apprenticeship and Training Fund ("JATC") and the International Masonry Institute ("IMI"). Under the CBAs, employers are also obligated to take after-tax deductions from employee paychecks for the Vacation Fund ("VF"), which is a component of the Welfare Fund, at a specified rate per hour and transmit them to the Welfare Fund.[2] Pl. Exs. 1 & 2. Under the CBAs, covered employers are also obligated to take after-tax deductions from employee paychecks for dues to Local 1 and its parent, the IU, and transmit them to the Funds.

The two CBAs relevant to this case covered the periods July l, 2008 - June 30, 2011 and July 1, 2011 - June 30, 2014. *Id.* The CBAs bound the employer members of the ABMC to the Agreements and Declarations of Trust for the Pension, Welfare and Annuity Funds, the JATC, IPF, and IMI. The Local 1 Fringe Benefit Funds (the Pension, Annuity and Welfare Funds and the JATC) were established pursuant to the Taft-Hartley Act, 29 U.S.C. §

---

[2] The Pension Fund, Annuity Fund, IPF, Welfare Fund (including the VF), JATC, and IMI are collectively referred to as the "Funds."

186(c). The ABMC and another multi-employer association appointed trustees to the board and together had the same number of votes as Local 1's trustees. Defendant Ken Sr. was a trustee of the Welfare Fund, the Pension Fund, the Annuity Fund and the JATC, but he resigned from that position in late 2013, after this lawsuit was filed.

As Local 1 President, Jeremiah Sullivan is responsible for enforcing the terms of the CBAs. His duties include collecting all contributions and remittances owed to the plaintiffs by employers bound by Local 1 CBAs, a total of more than 200 employers. Under the CBAs, Local 1 had the right to strike a delinquent employer to compel payment of delinquent contributions: "In the event the Employer does not make timely payment of contributions to Bricklayers Fringe Benefit Funds required herein, the Union shall have the right to remove all its members from the job, provided that three (3) days written notice of the intent to remove Bricklayers from the job is given to the Employer by the Union by Certified Mail." Pl. Ex. 2 at 18.

Defendants Ken Sr., Mark LaSala ("Mark"), and Kenneth LaSala, Jr. ("Ken Jr.") (collectively, the "LaSala Defendants") are the sole officers and shareholders of two masonry subcontractors: Town Masonry Corp. and New Town Corp. ("Town" and "New Town," respectively). Town and New Town were members of the ABMC and therefore bound by the ABMC's CBAs with Local 1. Mark and Ken Jr. each held 45% of Town's shares, while Ken Sr. held 10%. *See* Pl. Ex. 26 (Mark LaSala Dep.) at 166.[3] Ken Sr. managed Town and New Town's operations. He was the representative for both Mark and Ken Jr. in their dealings with the Funds and Local 1. Ken Jr. and Mark were the sole officers and shareholders of Town Holding Corp. ("THC"), a real estate entity that owned the property located at 711 South Columbus Avenue,

---

[3] The percentage ownership interests of New Town cannot be determined from the evidence produced at trial.

4

Mount Vernon, New York, where Town was headquartered (the "Mount Vernon Property").[4] Def. Ex. E.

On March 25, 2011, after an audit revealed a deficiency in the contributions due to the Funds, Ken Sr. executed on behalf of Town and New Town a payment agreement under which the companies promised to pay $1,457,645.35 owed for the audited period of July 1, 2009 through June 30, 2010. *See* Pl. Ex. 14. As part of the payment agreement, Ken Sr. also executed on behalf of Town a confession of judgment for $1,457,645.35 that the Funds could enter if Town had a defaulted on its obligations. *See id.*

A subsequent audit revealed an additional deficiency, and as a result, on September 7, 2011, Ken Sr., again on behalf of Town and New Town, signed an APA. *See* Pl. Ex. 17. Under that agreement, the companies promised to pay $1.8 million in delinquencies that they owed for the audited periods covering July 1, 2009 to March 31, 2011 in a series of installments that were to be completed by May 2012. *Id*. Attached to the APA was a Confession of Judgment that Ken Sr. signed on behalf of Town, which allowed the Funds to enter a judgment for $1.8 million (less any payments) against Town in the event of default. *Id.*

On November 7, 2011, plaintiffs sent Town a notice to cure its failure to make the payments called for under the APA. *See* Pl. Ex. 21. At that point, Town and New Town had made only one payment of $100,000. Plaza's payment of Town's delinquencies at Maspeth and Spring Creek for March 2011, however, had reduced the unpaid principal further. As a result, by early November, the unpaid principal amounts due to the plaintiffs under the APA were as follows: Annuity – $306,050.99; Pension – $317,832.53; Welfare (Medical) – $373,103.81; Welfare (Vacation Fund) – $89,221.64; JATC – $5,401.83; IPF – $135,744.34; and Local 1 dues

---

[4] In a post-trial motion, Local 1 requested that I take judicial notice of a document filed by THC as part of its bankruptcy case, which states that the shareholders of THC are Mark and Ken Jr., and that Ken Sr. had no interest in THC. *See* ECF No. 128. I grant that application.

– $71,604.22. *See* Pl. Ex. 22. Altogether, the amounts totaled $1,298,959.30, plus $200,000 due for interest and liquidated damages.[5] *Id.*

The CBAs provided that the trustees "shall have the right to request any employer to increase the amount of its surety bond and/or cash and/or collateral alternatives whenever they deem it necessary for the protection of Bricklayers Fringe Benefit Funds." *See* Pl. Ex. 2 at 20. By email dated November 10, 2011, plaintiffs invoked that clause, demanding that Ken Sr. "post meaningful collateral to secure his debt." *See* Pl. Ex. 23.

On November 17, 2011, Sullivan, Ken Sr., James Wasserman (Local 1's counsel), William Dealy[6] (counsel for Ken Sr., Town, and New Town), and Anthony LaCava (vice president and field representative of Local 1) met in Local 1's office at 4 Court Square, Long Island City, New York to discuss how Town and New Town would pay their outstanding obligations to the Funds. At that meeting, Sullivan asked Ken Sr. about the delinquency and his failure to abide by the APA. Ken Sr. responded that he was going to pay $1 million by the end of January toward the deficiency from the proceeds of an imminent real estate sale. According to Ken Sr., another $500,000 would be paid to the Funds by the end of March 2012. Ken Sr. stated that a contract of sale for the property was expected to be signed by Thanksgiving. The precise details of the sale could not be disclosed because of the supposedly confidential nature of the deal.

---

[5] At oral argument for Plaza and plaintiffs' summary judgment motions, the LaSala Defendants conceded liability on amounts owed to the IPF and for union dues. I granted summary judgment in favor of plaintiffs for these amounts, excluding those which were assigned to Plaza, in plaintiffs' first and fourth claims for relief. *See* Memorandum and Order, Feb. 18, 2015, ECF No. 117 at 13; Second Am. Compl. ¶¶ 20-27, 35-38. Although contributions to the IPF are made directly by employers, because the IPF's Declaration of Trust provides that "Title to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund," it is subject to the same rules as if these contributions were deducted from employee paychecks and remitted. *See* LaSala Aff. ¶ 12, ECF No. 110.

[6] Dealy passed away on December 30, 2012. *See* Trial Tr. at 61-62; LaSala Defs' Summary Judgment Opp. Br. at 4 n.4, ECF No. 111.

Thanksgiving came and went. On December 14, 2011, Dealy sent a letter to Wasserman following up on the November 17, 2015 meeting concerning delinquencies in the contributions due to the Funds. Def. Ex. F. The letter stated that the LaSala family's holding company had entered into a Letter of Intent to sell a piece of real estate to a developer, and "[t]he sons of Kenneth LaSala, Sr. have committed, upon the closing of the real estate development transaction . . . to lend and/or infuse into [Town and/or New Town] One Million ($1,000,000) Dollars to be used exclusively to pay off principle [sic] amounts due for benefit fund contributions." *Id.* at 2. It continued:

> Nothing contained in this letter is intended to imply in any way that Kenneth LaSala, Sr., Kenneth LaSala, Jr. or Mark LaSala guaranty in any way any payments due to the Benefit Funds. This transaction is contemplated to take place over the next four (4) months, and the infusion of capital to [Town and/or New Town] is dependant [sic] upon the successful closing of this transaction.

*Id.* Plaintiffs did not respond to this letter in writing. When the trustees of the Funds held their quarterly meeting on December 22, 2011, Ken Sr., who was a trustee of the Funds, did not attend, but Dealy was present. Sullivan and Wasserman discussed this letter prior to the meeting, and Wasserman discussed the letter with Dealy.

On February 9, 2012, Town entered into Chapter 11 bankruptcy proceedings. On February 15, 2012, Sullivan, Wasserman, Dealy, and Ken Sr. met at the Funds' offices at 605 Woodhaven Boulevard, Rego Park, New York. At that meeting, Ken Sr. assured Sullivan that the full $1.5 million owed by Town and New Town would still be paid to the Funds by the end of March 2012. The proceeds of the real estate transaction, he assured Sullivan, would be "personal family property" that was "outside the bankruptcy." Trial Tr. at 20.

These amounts were never paid, but the parties continued to discuss the issue. Dealy's legal billing records contain an entry on March 27, 2012, for a "conference call with

7

James Wasserman, Esq. concerning a previously proposed $1 million infusion out of the real estate projects; follow up conference call with Kenneth LaSala re: same." Pl. Ex. 45.

I find that Ken Sr. made an oral promise at the November 17, 2011 meeting to pay $1.5 million owed to the Funds out of his personal assets, and reaffirmed this promise in February 2012 after Town filed for bankruptcy. However, I also find that this promise was at all times conditioned upon the sale of the Mount Vernon Property. That property was never sold, and hence Ken Sr. never paid the promised $1.5 million to the Funds.

B.   *Conclusions of Law*

    1.   *Fiduciary Liability of Mark and Ken Jr.*

Under ERISA, "a person is a fiduciary with respect to a plan to the extent [1] he exercises any discretionary authority or discretionary control respecting management of such plan or [2] exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A) (emphasis added). Congress, by using this statutory language, intended the term "fiduciary" to be construed broadly. *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997). Unlike the common law definition, ERISA's definition of fiduciary status is functional and not determined by virtue of the position a person holds. *Id.*

Though Mark and Ken Jr. are shareholders and officers of Town and New Town, there was no evidence that they had any trustee relationship with the employee-benefit funds, or any discretionary authority or control respecting the management of these various plans. To establish fiduciary duty under the latter prong, the plaintiffs must show both that (1) the unpaid contributions were plan assets, and (2) the LaSala Defendants exercised a level of control over those assets sufficient to make them fiduciaries. *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009).

8

As I noted in my Memorandum and Order with respect to the motions for summary judgment, absent provisions to the contrary in the relevant plan documents, "unpaid contributions are not assets of the plan." *Halpin*, 566 F.3d at 287. Rather, employer contributions become assets only after being paid. *Id.* at 290; *Finkel v. Romanowicz*, 577 F.3d 79, 86 n.8 (2d Cir. 2009); *see also NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 200-01 (S.D.N.Y. 1999). Since the amounts owed to the Pension Fund, Annuity Fund, Welfare Fund and the JATC consist of unpaid employer contributions, they were not "plan assets" with respect to ERISA. Therefore, I conclude that Mark and Ken Jr. are not fiduciaries under 29 U.S.C. § 1002(21)(A).

2.  *Ken Sr.'s Liability as a Trustee to the ERISA Funds*

Since Ken Sr.'s promise to pay was contingent upon an event that never happened, *i.e.*, the sale of the Mount Vernon Property, I cannot conclude that he violated any fiduciary duty, to the extent he had one, by failing to pay $1.5 million out of his personal assets to satisfy Town and New Town's debts to the Funds.

However, even if the promise were unconditional, Ken Sr. would still not be personally liable under ERISA for a breach of fiduciary duty. Since the owed amounts were not plan assets, Ken Sr., like Mark and Ken Jr., is not a fiduciary under the second prong of 29 U.S.C. § 1002(21)(A). However, unlike Mark and Ken Jr., Ken Sr. served as a trustee of the Welfare Fund, the Pension Fund, the Annuity Fund, and the JATC. As a result, irrespective of whether the employer contributions are "plan assets," Ken Sr. may still be a fiduciary under the first prong if he "exercise[d] any discretionary authority or discretionary control respecting management of [the ERISA-covered] plan." 29 U.S.C. § 1002(21)(A).

For fiduciary duty to attach, however, Ken Sr. would have to be "acting as a fiduciary (that is . . . performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "[F]iduciary status is not an 'all or nothing' concept; a court must ascertain whether one acts as a fiduciary with respect to the particular activity in question." *Trustees of the Health & Welfare & Pension Funds of the Four Joint Boards v. Schlesinger Bros., Inc.*, 931 F. Supp. 204, 207 (S.D.N.Y. 1996) (internal quotation marks omitted). Here, Ken Sr.'s fiduciary status hinges on whether he made the promise to repay in his capacity as a trustee of the funds, or rather as an employer. "ERISA permits employers to wear two hats, and . . . they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1416-17 (2d Cir. 1985) (internal quotations omitted); *abrogated on other grounds by Mead Corp. v. Tilley*, 490 U.S. 714, 721 (1989); *see also Bell v. Pfizer, Inc.*, 626 F.3d 66, 78 (2d Cir. 2010) ("[T]he 'two-hats' doctrine . . . confines the fiduciary obligation of an employer to actions in its capacity as administrator of the ERISA plan.").

I conclude that Ken Sr. did not make his conditional promise to personally pay for the debts of Town and New Town in his capacity as a trustee for the funds. Rather, he made it as a representative of Town and New Town. Such promises are distinct from conduct usually associated with plan administration that may confer a fiduciary duty. *Cf. Varity Com. v. Howe*, 516 U.S. 489, 498-504 (1996) (holding that defendants', who were both employers and plan administrators, intentional representations about the future of plan benefits to employee participants were acts of plan administration); *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) (affirming the finding of fiduciary breach where trustees, who were also corporate officers

10

and directors, decided to purchase additional stock with pension fund monies to defend against a takeover bid); *see also Sasso v. Cervoni*, 985 F.2d 49, 51 (2d Cir. 1993) (holding a corporate employer does not have a fiduciary obligation to make trust fund contributions and a corporate officer's role in a company's failure to make such contributions is not automatically a breach of fiduciary duty); *Gearren v. McGraw-Hill Companies, Inc.*, 690 F. Supp. 2d 254, 272-73 (S.D.N.Y. 2010) ("Defendants who prepared the SEC documents did so in a corporate, rather than fiduciary, capacity and therefore did not incur liability through their preparation."), *aff'd*, 660 F.3d 605 (2d Cir. 2011).

As a final point, though scant evidence was produced on the issue at trial, the record suggests that the LaSala Defendants ignored corporate formalities with respect to Town, New Town, and THC. "Courts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987). Indeed, Ken Sr.'s testimony reflects a remarkable insouciance about his official position at the companies:

> Q. What is your affiliation with Town Masonry Corp?
>
> A. I'm probably vice president.
>
> Q. And what about New Town masonry?
>
> A. Probably the same thing.

Trial Tr. at 55.[7] However, Ken Sr.'s promise was always conditioned on an event that never occurred, so placing him in the shoes of Town and New Town under a veil-piercing theory would not fundamentally alter the analysis. Simply put, his promise was not broken. Moreover, the limited evidence on the legitimacy of the companies' corporate form is not one-sided. Town

---

[7] For all practical purposes, Ken Sr. appears to have been the ultimate decision-maker for Town and New Town, representing the companies in negotiations and signing contracts on their behalf. *See generally* Pl. Exs. 25-27.

11

and New Town, as best I can tell, were not fly-by-night, shell corporations; they actively engaged in the business of bricklaying for many years prior to this litigation. Though Town eventually filed for bankruptcy (which, from the limited record, appears in part the result of several ill-fated construction projects), there is no persuasive trial evidence of "wholly inadequate capitalization," or that the LaSala Defendants, apart from paying themselves substantial salaries,[8] embezzled funds. *Cf. Lowen* 829 F.2d at 1221. Given the limited trial evidence for piercing the corporate veils of Town and New Town, the absence of any such argument from plaintiffs,[9] and that this issue is largely mooted by the fact that Ken Sr.'s promise was at all times contingent on the unconsummated sale of the Mount Vernon Property, I do not find a "failure to disregard the corporate form in the circumstances of the present case would fatally undermine ERISA." *See id.*

## CONCLUSION

For the foregoing reasons, the Court finds in favor of the defendants with respect to the third claim for relief. In light of this and prior rulings, the parties, including Plaza Construction LLC, are directed to confer and jointly submit a proposed judgment resolving all claims in the case on or before September 9, 2015.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 24, 2015
    Brooklyn, New York

---

[8] Ken Sr., Mark, and Ken Jr. took salaries during the relevant time period of $109,150, $185,900, and $175,500, respectively. *See* Pl. Exs. 28-30.

[9] The plaintiffs do not advance any such argument in their Proposed Findings of Fact. *See* ECF No. 125.

12